UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| AMADOR RIVERA, | ) | |
| | ) | |
| Petitioner, | ) | Civil No. 11-141-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| KAREN HOGSTEN, | ) | **MEMORANDUM OPINION** |
| | ) | **AND** |
| Respondent. | ) | **ORDER** |

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

Amador Rivera is an inmate confined at the Federal Correctional Institution in Manchester, Kentucky. Rivera has filed an original and amended habeas corpus petition pursuant to 28 U.S.C. § 2241 and has paid the filing fee. [R. 2, 5] Having reviewed the petition[1], the Court will deny relief.

**I.**

In 1994, Rivera was charged for his participation in a war between two rival gangs in Hartford, Connecticut in 1993. A high-level "enforcer" in the Los Solidos gang, Rivera participated in drug trafficking, the murder of Angel Serrano on November 25, 1993, and

---

[1] The Court conducts a preliminary review of habeas corpus petitions. 28 U.S.C. § 2243; *Harper v. Thoms*, No. 02-5520, 2002 WL 31388736, at *1 (6th Cir. Oct. 22, 2002). Because the petitioner is not represented by an attorney, the petition is reviewed under a more lenient standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage the Court accepts the petitioner's factual allegations as true, and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Once that review is complete, the Court may deny the petition if it concludes that the petition fails to establish grounds for relief, or otherwise it may make such disposition as law and justice require. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

assisted fellow gang members in evading arrest or interrogation for their activities. Following a six-week jury trial conducted over three months with numerous co-defendants, on July 26, 1996, Rivera was convicted of racketeering in violation of 18 U.S.C. § 1962(c); conspiracy to commit racketeering in violation of 18 U.S.C. § 1962(d); conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5); and conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846, 841(a)(1). On December 5, 1996, he was sentenced to serve three terms of life in prison and one term of ten years, to be served concurrently. Rivera's conviction and sentence were affirmed on direct appeal, and his motion for relief pursuant to 28 U.S.C. § 2255 was denied. Rivera's sentence was subsequently recalculated to a cumulative forty year term when the trial court concluded that *Apprendi v. New Jersey*, 530 U.S. 466 (2000) applied retroactively. *United States v. Rivera*, No. 3:94-cv-223-PCD (D. Conn. 1994); *United States v. Rivera*, 192 F.3d 81, 83 n.1 (2d Cir. 1999).

The Bureau of Prisons has indicated that since his arrest, Rivera has provided false information regarding his name, social security number, date of birth, and other identifying information. Some of this false information found its way into the files of the BOP and the FBI, and Rivera then argued that federal authorities had convicted and imprisoned the wrong man. When Rivera presented the errors to the BOP, it verified certain information and corrected the discrepancies in its records, but declined to let him walk free. Rivera then filed suit to obtain his release based upon these errors, both in this Court and in the Court of his conviction, to no avail. *Rivera v. Rios*, No. 7:08-CV-010-KKC, 2008 WL 973095 (E.D. Ky. 2008); *Rivera v. Doe*, No. 3:09-CV-7-CSH (D. Conn. 2009).

In his current petition, Rivera argues that the presentence investigation report (PSR) incorrectly states that he committed the offense conduct - namely his participation in the drug,

racketeering, and murder conspiracies - between May 1991 and September 1995. Rivera states that he was in state prison for the vast majority of this time period, and therefore could not have committed the conduct described in the indictment during this time. [R. 2 at 6.] While Rivera has not provided further detail, the United States recently set forth Rivera's criminal and custodial history during the pertinent period in its response to one of several successive motions filed by Rivera for relief under 28 U.S.C. § 2255:

> From March 21, 1991 to November 1, 1991, he was incarcerated on two counts of assaulting a police officer. Petitioner was released on November 1, 1991, only to return to prison on new charges eight months later, on July 6, 1992. Petitioner spent the remainder of 1992 in state custody, and was released on or about May, 17, 1993. According to Petitioner's PSR, almost a year passed before Petitioner was arrested again on April 27, 1994. This time, he was arrested for Carrying a Pistol Without a Permit, and was released on October 26, 1995. Id. * * * On December 11, 1995, Petitioner was arrested pursuant to a federal arrest warrant. He was arrested and charged, along with fifty-two (52) other individuals, following an investigation into the Los Solidos Street Gang.

*Rivera v. United States of America*, No. 3:10-CV-1970-PCD (D. Conn. 2010) [R. 6.]

Rivera does not challenge his conviction. Instead, he argues that the BOP has incorrectly determined that he is subject to 28 C.F.R. § 523.20(b). This regulation renders Good Conduct Time ("GCT") earned by an inmate subject to forfeiture by subsequent disciplinary sanctions if he has not either earned a high school diploma or a General Education Development equivalent, or if he is not at least making satisfactory progress towards earning a G.E.D. [R. 5 at 7-8.] By its terms, this provision only applies to an inmate who committed his offense on or after September 13, 1994, but before April 26, 1996, under the Violent Crime Control and Law Enforcement Act (VCCLEA).

Rivera argues that he could only have committed his federal crimes during a period in 1993 when he was out of state prison, and thus his sentence is governed by the Sentencing Reform Act (SRA), which applies to offenses committed on or after November 1, 1987 but

before September 13, 1994. If so, his GCT would be governed by 28 C.F.R. § 523.20(a), and would be earned without respect to whether he is making satisfactory progress towards earning a G.E.D. [R. 2 at 6-7.] This distinction is important because the BOP has listed Rivera as making unsatisfactory progress towards earning his G.E.D. since December 26, 2006. [R. 5-1 at 1.] Records provided by Rivera indicate that he continues to earn 54 days of GCT each year, but that the BOP considers the GCT he earned since that date to be subject to forfeiture in the event he commits a violation of disciplinary rules in the future. [R. 5-1 at 2.]

When Rivera challenged the BOP's determination that his GCT was subject to forfeiture, the warden responded:

> A review of this matter indicates the indictment provided by the courts reveals you were sentenced under three, Violent Crime Control and Law Enforcement Act (VCCLEA) counts and one, Sentencing Reform Act (SRA) count. This includes counts 1, 2, and 34 for RICO Conspiracy, and count 10, for Conspiracy to Murder, respectively. The indictment indicates the following: the offense date for count 1 and 2, was September 1, 1995; the offense date for count 34, was October 26, 1994; and the offense date for count 10, was November 26, 1993. Pursuant to Program Statement 5880.28, Sentence Computation Manual, CCCA, the date of offense is the date on which the criminal act takes place, or date ongoing criminal activity (conspiracy) ends. In your case, you were found guilty of three conspiracies which occurred between 1991 through March 1995, and one conspiracy which ended on 1993. As a result, your dates of offense are correct. An examination of your Presentence Investigation Report (PSR) does indicate you were arrested and held from February 1994, through October, 1995, at which point you were released from state custody. however, this does not exempt three of your offenses from falling under the VCCLEA, based on the fact they were ongoing conspiracies. * * * As a result of the above information, you are still subject to a loss of GCT, based on your unsatisfactory GED assignment and dates of offense.

[R. 5-1 at 6.] The regional and national offices denied relief on the same grounds. [R. 5-1 at 8, 10.]

Rivera argues that because he was only out of state custody for a portion of 1993, and was back in state custody on April 27, 1994, he must have committed his federal offenses before the VCCLEA became effective on September 13, 1994. He therefore requests an order directing

the BOP to administer his GCT under 28 C.F.R. § 523.20(a) where it is not subject to forfeiture.

## II.

Rivera's petition must be denied because it does not present a justiciable controversy. Article III of the Constitution limits the jurisdiction of federal courts to deciding "actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To determine if this case orcontroversy requirement is satisfied with respect to a particular claim, a court applies certain "justiciability" tests, which include the doctrines of standing, ripeness, and mootness. A plaintiff has "standing" to assert a claim only if he or she has suffered a concrete and particularized injury, either in the past or in the immediate future, and a favorable ruling would provide actual relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). If a plaintiff seeks to enjoin the defendant from inflicting an injury in the future,

> [he] must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Summers v. Earth Island Institute*, 555 U.S. 488, 129 S.Ct. 1142, 1149 (2009).

The doctrine of ripeness focuses on the extent of the actions taken by the defendant. To determine whether a matter is ripe, a court considers whether the issues are fit for judicial review and if the parties will suffer hardship if the court withholds consideration. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–149 (1967). Generally speaking, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal citations omitted). Thus, until an administrative agency has taken "some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him," the matter is not yet ripe for review. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 891 (1990). This

rule is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dept. of Interior*, 538 U.S. 803, 807–08 (2003).

In this case, the BOP has clearly and unequivocally stated that the GCT that Rivera has earned remains subject to forfeiture unless and until he resumes satisfactory progress towards earning his G.E.D. [R. 5-1 at 1.] However, the records provided by Rivera also indicate that he has not committed any disciplinary infraction which would actually cause a forfeiture of his GCT. [R. 5-1 at 2.] Unless and until Rivera chooses to commit such a disciplinary infraction, the BOP may never apply this policy to him. Because at this juncture the BOP has yet to take any "concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him," *Lujan*, 497 U.S. at 891, any decision by this Court interpreting the regulations at issue would be speculative and premature. *Lopez v. Wrigley*, No. 1:07-cv-116-AWI, 2007 WL 1946649 (E.D. Cal. Jul. 2, 2007) (federal prisoner's challenge to BOP policy regarding possible 6-month placement in a halfway house was not ripe where consideration for such placement, which occurs 11-13 months before release date, had not yet even occurred); *Hall v. Sanders*, No. 2:05CV143-JWC, 2005 WL 2587761, at *2-3 (E.D. Ark. Oct. 13, 2005) (habeas petitioner lacked standing to challenge BOP policy that had not, and might never be, applied to him).

Finally, Rivera's legal argument that he could not have committed the offense conduct in furtherance of the conspiracy when he was in state prison is without merit. Once a defendant joins in the conspiracy, he is responsible for the acts of his co-conspirators taken in furtherance

of its objectives for as long as the conspiracy continues. *Pinkerton v. United States*, 328 U.S. 640, 645-47 (1946). Therefore, "a criminal conspiracy is presumed to continue until all the objects of the conspiracy have been accomplished or until the last overt act is committed ***by any of the conspirators***." *United States v. Finestone*, 816 F.2d 583, 589 (11th Cir. 1987) (emphasis added). While the conspiracy to commit murder charged in Count 10 necessarily concluded upon Rivera's successful efforts to kill Angel Serrano on November 25, 1993, the efforts of Rivera's co-conspirators in the Los Solidos gang to conduct racketeering and narcotics trafficking could readily have continued until September 1, 1995, as charged in the Third Superceding Indictment and as found by the jury. Therefore, the mere fact that Rivera was incarcerated on a particular date does not, by itself, preclude the BOP from using that date as the offense date for purposes of determining the applicability of the VCCLEA.

        Accordingly, **IT IS ORDERED** as follows:

1. Rivera's petition for a writ of habeas corpus [R. 2, 5] is **DENIED**; and

2. The Court will enter an appropriate judgment.

This the 23rd day of June, 2011.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge